IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TERESA ROTKOWSKI                                                                PLAINTIFF

v.                                          CASE NO. 3:15-CV-03085

ARKANSAS REHABILITATION SERVICES
and / or ALAN McCLAIN, as Commissioner
and Head of Arkansas Rehabilitation Services                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Arkansas Rehabilitation Services' and Alan McClain's (together, "ARS") Motion for Judgment on the Pleadings (Doc. 20) and Plaintiff Teresa Rotkowski's Response in Opposition (Doc. 22). For the reasons stated herein, Defendants' Motion is **DENIED**.

### I.   BACKGROUND

The facts recited herein are detailed in the light most favorable to Rotkowski, and are limited in scope to what is necessary to adjudicate the pending motion. ARS is a state agency that provides career and education services to Arkansans with special needs. First hired in 2007, Teresa Rotkowski was employed by ARS as a vocational counselor. Rotkowski claims to be a person with a disability. She has a sensitivity to certain fragrances and chemicals that causes physical manifestations including severe head pain, nausea, breathing difficulties, fatigue, muscle and joint pain, and swelling in the face and neck. In 2009, she informed ARS of this condition by sharing a letter from her doctor which recommended several accommodations ARS could take to reduce or eliminate her symptoms. In response, ARS District Manager Carol Ethridge implemented a "no perfume" policy, and sent a letter to all of ARS's clients asking them

1

to refrain from wearing perfumes or colognes within the ARS office. ARS also set up an air purifier in the common area of the office to accommodate Rotkowski's sensitivity.

All was seemingly well until October of 2014, when one of Rotkowski's co-workers complained about the no perfume policy and the air purifier. The Chief of Staff of ARS, Carl Daughtery, held a conference call on October 20, 2014, during which he decided to end the no perfume policy and to move the air purifier from the common area to Rotkowski's office. In response, Rotkowski requested a 3-in-1 combination fax, scanner, and copier for her office in order to limit the amount of time she had to spend in the office's common area. Her request was denied.

In early November of the same year, Rotkowski's former co-worker, Pam Koehler, filed a response brief to a pending motion for summary judgment in a federal lawsuit against ARS. The brief used Rotkowski's testimony in support of Koehler's position. Around the same time, ARS removed some of Rotkowski's supervisory responsibilities, laid-off her assistant, and asked her for a doctor's note for being absent.

A few months later, in February of 2015, Rotkowski emailed her supervisor, Daughtery, and an HR employee named DeCarlia Dickens to remind them that she had requested accommodations, inform them of the difficulty she was having attending meetings, and notify them that she had submitted certain documentation about her requested accommodations to the EEOC. Later that month, Rotkowski contacted ARS's landlord to request a new door knob. As it would have taken a week to fix the broken door knob, Rotkowski asked for and received the landlord's permission to have her husband install a new door knob. The new knob was installed on February 16, 2015. Ten days later, Daughtery called a meeting with Rotkowski to inquire into why she

installed a lock and chain on her door. In the meeting, Daughtery stated that Rotkowski failed to follow the proper process for requesting the lock, and then terminated her employment.

Rotkowski believes that Daughtery's justification for terminating her was prextext, and that she was actually fired because of her efforts to obtain accommodations for her fragrance sensitivity or her testimony in the *Koehler* case. Accordingly, after receiving a Notice of Rights letter from the EEOC, she filed a Complaint (Doc. 1) in this Court on September 23, 2015, and later filed an Amended Complaint (Doc. 16) on December 15, 2015. The Amended Complaint alleges that ARS's actions constitute a violation of the Rehabilitation Act of 1973 and requests damages pursuant thereto. ARS filed its Answer (Doc. 19) on December 21, 2015, generally denying the allegations in the Amended Complaint. It then filed the instant Motion for Judgment on the Pleadings (Doc. 20) and a Brief in Support (Doc. 21) on January 26, 2016. Rotkowski countered with her Response in Opposition (Doc. 22) on February 9, 2016, and the Motion is now ripe for decision.

## II.   LEGAL STANDARD

As an initial matter, the distinction between a motion for judgment on the pleadings brought under Fed. R. Civ. P. 12(c) and a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) "is purely formal, because we review [a] 12(c) motion under the standard that governs 12(b)(6) motions." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive ARS's Motion for Judgment on the Pleadings, Rotkowski's Amended Complaint must present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The intention of this is to

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In evaluating the sufficiency of the Amended Complaint, the Court assumes that "all factual allegations in the pleadings are true and interpret[s] them in the light most favorable to the nonmoving party." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) (internal quotation omitted).

Even so, the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In short, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). When adjudicating a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings, Fed. R. Civ. P. 12(d), but may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## III. DISCUSSION

ARS offers two arguments as to why Rotkowski has failed to state a claim upon which relief may be granted. First, it contends that Rotkowski's fragrance sensitivity does not constitute a "disability" as defined by the Rehabilitation Act. Second, it argues that Rotkowski is not a "qualified individual" as defined by the Rehabilitation Act. The Court will address each argument in turn.

### A. Rotkowski's Fragrance Sensitivity Constitutes a Disability as Pleaded

The Rehabilitation Act declares that "[n]o otherwise qualified individual with a disability . . . shall solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).[1] In cases alleging employment discrimination, Rehabilitation Act violations are evaluated using the same standards applied under the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 794(d); *Perkins v. St. Louis Cnty. Water Co.*, 160 F.3d 446, 448 (8th Cir. 1998) (noting that "the legal principles applicable to [the ADA] are equally applicable to [the] Rehabilitation Act"). Accordingly, "cases interpreting either are applicable and interchangeable . . . ." *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996).

A plaintiff's impairment will constitute a disability when it creates a "substantial limitation" on "one of more major life activities." 42 U.S.C. § 12102(1)(A). This definition encompasses not only individuals with actual "physical or mental impairment[s]," but also those with "a record of such an impairment," or those "regarded as having such an impairment." 42 U.S.C. § 12102(1).

---

[1] The parties agree that ARS receives federal financial assistance, *see* Doc. 19, ¶ 4, bringing it under the ambit of the Act.

The Supreme Court had occasion to expound upon the meaning of "disability" in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). Petitioners in *Sutton* were severely myopic twin sisters, whose vision was 20/200 or worse without corrective glasses. *Id.* at 475. With corrective glasses, however, their vision was 20/20 or better. *Id.* In 1992, the sisters both applied for employment as commercial airline pilots with United. *Id.* While they satisfied all of the other basic qualifications for the position, both were told that their vision did not meet United's minimum requirements. *Id.* at 476. The sisters sued United under the ADA, alleging that their vision impairment constituted a disability, and that United had discriminated against them on the basis of that disability. *Id.* The Court disagreed, and held that the effects of corrective measures—such as glasses—had to be taken into account when determining whether an impairment substantially limited a major life activity. *Id.* at 482.

The scope of the ADA's definition of disability was again at issue three years later, in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). Williams claimed to be disabled due to her carpal tunnel syndrome, which prevented her from performing certain manual tasks at work. *Id.* at 187. The Sixth Circuit held that Williams met the ADA's definition of disabled because her carpal tunnel syndrome prevented her from performing manual tasks, a major life activity. *Id.* The Supreme Court reversed, opining that the terms "substantially" in "substantially limits" and "major" in "major life activities" must be "interpreted strictly to create a demanding standard for qualifying as disabled . . . ." *Id.* at 196-97. In accordance with this strict interpretation, the Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing

activities that are of central importance to most people's daily lives." *Id.* at 198. This conflicted with the Sixth Circuit's more lax conception of disability, which would have required a plaintiff only to show that her "manual disability involves *a class* of manual activities" which "affect the ability to perform tasks *at work*." *Id.* at 199 (quoting *Williams v. Toyota Motor Mfg., Kentucky, Inc.*, 224 F.3d 840, 843 (6th Cir. 2000)) (emphasis added) (quotation and alteration omitted).

ARS relies on two district court cases decided in the wake of *Sutton* and *Toyota Motor* that both dismiss ADA claims brought by plaintiffs with fragrance sensitivities. *See Robinson v. Morgan Stanley Dean Witter*, 2007 WL 2566294 (N.D. Ill. Aug. 31, 2007); *McDonald v. Potter*, 2007 WL 2300332 (E.D. Tenn. Aug. 7, 2007). Relying in large part upon *Toyota Motor*, both cases found that the plaintiffs' fragrance sensitivities did not substantially limit their major life activities, and thus did not constitute disabilities under the ADA. *See* 2007 WL 2566294 at *4; 2007 WL 2300332 at *35-*40. ARS asks this Court to extend the same reasoning to the instant case, and find that Rotkowski's sensitivity does not constitute a disability.

ARS's reliance on these cases, however, is misplaced. In 2008, Congress passed and the President signed the Americans with Disabilities Amendments Act ("ADAAA"). In the "Findings and Purposes" section of the ADAAA, Congress explicitly chided the Supreme Court for "narrow[ing] the broad scope of protection intended to be afforded by the ADA" in *Sutton* and *Toyota Motor*. Pub. L. No. 11-325, 122 Stat. 3553, § 2(a)(4),(5) (2008). Congress then declared that the purpose of the ADAAA was to reject both *Sutton's* requirement that "whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating

measures," and *Toyota Motor's* holding regarding the strict interpretation of disability. *Id.* at § 2(b)(2)-(4). Focusing further on *Toyota Motor*, Congress explained that the decision had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA . . . ." *Id.* at § 2(b)(5). And, it specified its intent that, "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations," not "whether an individual's impairment is a disability under the ADA . . . ." *Id.* Consistent with those findings and purposes, the ADAAA expands the definition of disability and sets forth certain rules of construction for courts applying that term. At the heart of these rules is Congress's directive that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." *Id.* at § 3 (codified at 42 U.S.C. § 12102(4)(A)).

In light of Congress's directives, *Sutton, Toyota Motor*, and their progenies are no longer authoritative in determining whether a plaintiff is disabled. This includes both *McDonald* and *Robinson*. Following the passage of the ADAAA, and *contra* to those two latter cases, courts have consistently found fragrance sensitivity to be a disability. *See Brady v. United Refrigeration, Inc.*, 2015 WL 3500125 (E.D. Pa. June 3, 2015); *Bouard v. Ramtron Int'l Corp.*, 2013 WL 5445846 (D. Colo. Sept. 27, 2013); *Zandi v. JVB Fort Wayne Comm. Schls.*, 2012 WL 4472006 (N.D. Ind. Sept. 27, 2012) (all finding fragrance sensitivity to be a disability under the ADA). This Court is inclined to agree.

*Brady* and *Bouard* are particularly instructive to the Court in reaching its decision. The plaintiff in *Brady* alleged that her heightened sensitivity to perfumes, fragrant chemicals, and lotions resulted in periodic headaches, nausea, coughing, a burning

sensation in her throat, and difficulty concentrating. 2015 WL 3500125 at *1. She asserted that these symptoms substantially limited several of her major life activities, including breathing, thinking, concentrating, and working. *Id.* at *11. The plaintiff had also sought medical attention for her condition, and had provided her employer with a doctor's note documenting it. *Id.* The *Brady* Court found that the alleged impairments along with the fact that the plaintiff had sought medical attention were sufficient to show that her fragrance sensitivity substantially limited a major life activity, rendering it a disability under the ADA. *Id.* Similarly, in *Bouard*, the plaintiff's fragrance sensitivity caused headaches and loss of focus and concentration. 2013 WL 5445846 at *1. The plaintiff had sought medical treatment for this condition, which her physician confirmed in a statement to her employer. *Id.* at *8. This was sufficient, the *Bouard* Court found, to create "genuine issues of material fact . . . as to whether Bouard's sensitivity qualifies as a disability under the ADA." *Id.*[2]

As in *Brady* and *Bouard*, Rotkowski has alleged that her fragrance sensitivity substantially limits her ability to perform major life activities, such as seeing, walking, communicating, thinking, and working. (Doc. 16, ¶ 16). She has sought medical treatment for her symptoms, and her doctor confirmed her condition in a letter to ARS. (Doc. 16, ¶¶ 16, 17). Viewing these facts in the light most favorable to Rotkowski, and following the interpretive instructions dictated by Congress in the ADAAA, her Amended Complaint plausibly shows that her fragrance sensitivity constitutes a disability.

---

[2] While *Bouard* and *Brady* involved motions for summary judgment, the Court's reliance on those cases in resolving this Motion for Judgment on the Pleadings does not preclude it from reaching a different finding on the disability issue at a later stage of this case.

### B. Rotkowski is a Qualified Individual as Pleaded

Having a disability is alone insufficient to bring a plaintiff under the protection of the Rehabilitation Act or the ADA. A plaintiff must be an "otherwise qualified individual" despite her disability. 29 U.S.C. § 794(a). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In simpler terms, an individual whose disability renders her unable to perform a job even with *reasonable* accommodations is not protected by the Act (or the ADA).

This raises an obvious question: What constitutes a *reasonable* accommodation? The Eighth Circuit has recognized this inquiry as one that escapes any "precise test," *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999), as first-year law students struggling to grasp the law's often vague conceptions of reasonability would surely agree. But, both the ADA and case law offer some guidance on the matter. Under the ADA, reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [or] acquisition or modification of equipment or devices . . . ." 42 U.S.C. § 12111(9). These accommodations and others will be unreasonable, however, if they "either impose[] undue financial or administrative burdens, or require[] a fundamental alteration in the nature of the program." *Buckles*, 176 F.3d at 1101 (quoting *DeBord v. Board of Educ.*, 126 F.3d 1102, 1006 (8th Cir. 1997)). In *Buckles*, the fragrance-sensitive plaintiff requested an irritant-free work environment and additional unpaid sick time from his employer. The Eighth Circuit held that these accommodations were unreasonable, as

the ADA does not require an employer "to create a wholly isolated work space for an employee that is free from numerous possible irritants, and to provide an unlimited absentee policy." *Id.* Following *Buckles'* lead, several courts have found that "mandatory scent-free workplace policies impose an undue financial and administrative burden on employers, because they are very difficult to enforce." *Heaser v. AllianceOne Receivables Mgmt., Inc.*, 2009 WL 205209, *3 (D. Minn. Jan. 27, 2009) (listing cases); *see also Zandi v. JVB Fort Wayne Comm. Schls.*, 2012 WL 4472006 (N.D. Ind. Sept. 27, 2012) (creating a written policy prohibiting the spraying of fragrances in a high school was unreasonable); *Montenez-Denman v. Slater*, 208 F.3d 214, *2-*3 (6th Cir. Mar. 1, 2000) (unpublished) (affirming district court's finding that creating a fragrance-free work environment was unreasonable). In addition to burdening the employer, mandatory scent-free workplaces also "violate the rights of other employees" by "restricting their right to wear fragrances." *Heaser*, 2009 WL 205209 at *3 (citing *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995)).

Assuming that the aforementioned case law precludes Rotkowski's request for a mandatory scent-free workplace, the Court finds that she has plausibly alleged that other, reasonable, accommodations would allow her to perform the essential functions of her job. For example, Rotkowski requested a combination fax, scanner, and copier in order to minimize the amount of time she would have had to spend in the office's common area, where exposure to fragrances was greatest. In addition, the air purifier in the common area was removed and instead placed in Rotkowski's office. The Court cannot say that procuring the requested piece of equipment and moving the air purifier back into the common room are unreasonable accommodations. Nor can the Court say

that these accommodations would be ineffectual; they may allow Rotkowski to perform the essential functions of her job even without a mandatory scent-free workplace. Accordingly, the Court is unwilling to conclude that Rotkowski has failed to plausibly allege that she is a qualified individual at this early stage of litigation.

### IV.　CONCLUSION

For the reasons stated herein, the Court finds that Rotkowski has plausibly alleged that her fragrance sensitivity constitutes a disability, and that she is a qualified individual. ARS's Motion for Judgment on the Pleadings (Doc. 20) is therefore **DENIED**.

**IT IS SO ORDERED** on this 13th day of April, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE